UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RONALD C. DILEO,<br><br>Plaintiff,<br><br>-against-<br><br>AMERICAN EXPRESS COMPANY,<br><br>Defendant. | 12 CV 7150 (RA-RLE) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

DATED: November 27, 2012

KELLEY DRYE & WARREN LLP
Jean Y. Park (jpark@kelleydrye.com)
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800
Fax: (212) 808-7897
jpark@kelleydrye.com
  Attorneys for Defendant

NY01\PARKJE\1606107.2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RONALD C. DILEO, | Honorable Ronnie Abrams |
| Plaintiff, | 12 CV 7150 (RA-RLE) |
| -against- | **ORAL ARGUMENT REQUESTED** |
| AMERICAN EXPRESS COMPANY, | |
| Defendant. | |

## PRELIMINARY STATEMENT

Defendant, American Express Travel Related Services Company, Inc., erroneously designated "American Express Company" (hereinafter, "American Express" or the "Company"), by its attorneys, Kelley Drye & Warren LLP, submits this memorandum of law in support of its motion to dismiss the amended complaint of Plaintiff, Ronald C. DiLeo ("Plaintiff" or "DiLeo"), pursuant to Rule 12(b) of the Federal Rules of Civil Procedure (the "Motion").

DiLeo is a former American Express employee who worked for the Company as a Senior Vice President and General Manager of the Company's Business Travel Team for Europe, the Middle East and Asia. On November 6, 2006, under the advice of his own counsel, DiLeo entered into a written separation agreement with the Company which required him to exercise vested stock options at the end of a clearly prescribed period. DiLeo failed to do so and this entire action, based on the alleged verbal assurances and representations of Company counsel to the contrary, is nothing more than an attempted end run around that separation agreement and DiLeo's own inattention to his contractual obligations.

As set forth below, Plaintiff's common law claims for breach of contract, negligent misrepresentation, fraud in the inducement, promissory estoppel and unjust enrichment

NY01\PARKJE\1656849.2

fail to state a cognizable claim upon which any relief may be granted because DiLeo cannot establish the requisite justifiable reliance on alleged misrepresentations of Company counsel in the face of:

- Clear unequivocal contractual language stating that if Plaintiff did not exercise his vested stock options by April 25, 2008 (the end of his separation period), he would forfeit those options;

- An equally clear and unequivocal integration clause in Plaintiff's separation agreement providing that the agreement "supersedes all previous agreements, promises, proposals, representations, understandings and negotiations," including the putative assurances and representations of Company counsel, Jason Brown;

- Plaintiff's representation by his own, independent and outside counsel in the negotiation of the separation agreement, and

- Plaintiff's level of business sophistication as a Senior Vice President of American Express.

The Amended Complaint should be dismissed in its entirety.

## STATEMENT OF RELEVANT FACTS[1]

**A.   Plaintiff's Employment with American Express and Participation in the American Express Long-Term Incentive Award ("LTIA") Program**

Plaintiff began his employment with American Express in October of 2003, following an acquisition by American Express of Plaintiff's then-employer, Rosenbluth International. (Am. Compl. ¶ 7.)[2] American Express retained Plaintiff in a high-level executive capacity as the Senior Vice President and General Manager of Business Travel for Europe, the Middle East and Asia. (*Id.* at ¶ 8.)

---

[1]   Defendant assumes, as it must only for the purposes of this Motion, the truth of the pertinent factual allegations contained in the Amended Complaint.

[2]   Numbers in parentheses prefixed by "Am. Compl. ¶ __" refer to paragraphs contained in Plaintiff's Amended Complaint, dated November 5, 2012, a true and complete copy of which is annexed as Exhibit "A" to the Declaration of Jean Y. Park, dated November 27, 2012 (hereinafter "Park Declaration").

As an American Express senior executive, DiLeo became eligible to participate in the Company's Long-Term Incentive Award ("LTIA") program. (Am. Compl. ¶ 9.) Under that program, Plaintiff received three "tranches" of non-qualified stock option ("NQSO") awards between 2004 and 2006 as follows:

| Grant Date | Award Description | Number of NQSOs | Grant Price | Vesting Schedule | Expiration Date |
|---|---|---|---|---|---|
| 4/02/2004 | NQSO, 1-2-3-4 YR | 12,566 | $45.934 per share | 4 equal annual installments beginning on 1st anniversary of grant date | 4/02/2014 |
| 1/24/2005 | NQSO, 1-2-3-4 YR | 12,566 | $45.768 per share | 4 equal annual installments beginning on 1st anniversary of grant date | 1/24/2015 |
| 1/23/2006 | NQSO, 1-2-3-4 YR | 22,000 | $51.865 per share | 4 equal annual installments beginning on 1st anniversary of grant date | 1/23/2016 |

*See* Am. Compl. ¶¶ 11-15. These NQSO awards vested in four equal annual installments beginning on the 1st anniversary of the grant date and expired on the 10th anniversary of the grant date, subject to continuous employment at American Express. (Am. Compl. ¶¶ 11, 15.) Stated alternately, employees who did not exercise their vested NQSO awards prior to their last day of employment forfeited those stock options.

**B.    Plaintiff Is Terminated from American Express and
       Enters Into a Negotiated Separation Agreement**

In June 2006, DiLeo was informed that his employment with American Express was going to be terminated. (Am. Compl. ¶ 16.) In connection with this termination, DiLeo was offered a separation package, the terms and conditions of which were memorialized in a letter-agreement, dated October 30, 2006 (the "Separation Agreement"). (Am. Compl. ¶ 35; Brown

Decl. Exh. A.)[3]  Under the advice and counsel of his own attorneys, DiLeo accepted and agreed to these terms and conditions by signing the Separation Agreement on November 6, 2006. (*Id.* at pages 4, 11 and 15 (¶¶ 2(h), 10(b) and signature page.)

The Separation Agreement contained an express merger or integration clause, providing as follows:

> 15. Entire Agreement. This letter agreement constitutes the entire agreement between the Company and yourself concerning the termination of your employment and supersedes all previous agreements, promises, proposals, representations, understandings and negotiations whether written or oral, between the Company and yourself concerning the termination of your employment.

(Brown Decl. Exh. A. at ¶ 15, page 14.)

Under the Separation Agreement, DiLeo's active employment with the Company continued through October 27, 2006, after which DiLeo was deemed to enter into a 78-week separation period, running from October 28, 2006 through April 25, 2008 (the "Separation Period"). (Brown Decl. Exh. A at ¶ 1.) During this Separation Period, DiLeo received severance payments totaling $627,975.00 and other valuable benefits, such as medical, life and continued vesting of pension benefits as detailed in the Separation Agreement. (*Id.* at ¶ 2(a) – (i).)

The Separation Agreement also addressed DiLeo's NQSO awards, stating that His unvested awards would continue to vest and that vested awards would be exercisable during the Separation Period according to the following terms:

---

[3] Numbers and letters in parentheses prefixed by "Brown Decl. ¶ __" and "Brown Decl. Exh. __" refer respectively to paragraphs contained in and documentary exhibits annexed to the accompanying Declaration of Jason K. Brown, sworn to on November 27, 2012 (hereinafter, "Brown Declaration"). The Court may consider these documents in deciding the instant Motion because they are incorporated, by reference, in the complaint. *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).

4. <u>Incentive Awards and Bonuses.</u>

(a) Subject to the provisions of Paragraph 6, during both the remainder of your employment and Separation Period, existing awards... made under the American Express Company 1989 Long-Term Incentive Plan and the American Express Company 1998 Incentive Compensation Plan (the "LTIP Plans") will continue to vest in accordance with their terms, and stock options will continue to be exercisable to the extent they are still exercisable, subject to the terms and overall administration of such plans.

\* \* \*

Those stock options and other awards under the LTIP Plans which you currently hold and which have not been exercised or become vested on or before the earlier of (i) the date you begin a full-time position outside the Company (as defined in Paragraph 6) or (ii) the end of the Separation Period, will in accordance with their terms be canceled and terminated and all eligibility for payments pursuant thereto will cease.

(*Id.* at ¶ 4 (a); Am. Compl. ¶ 36.)[4]

The American Express Company 1998 Incentive Compensation Plan, incorporated by reference into the Separation Agreement (the "1998 ICP"), also expressly provided that all outstanding NQSOs (vested and unvested) would be cancelled upon termination of employment:

3. A Participant may not exercise this Option ... unless all of the following conditions are met:

\* \* \*

(c) The Participant must, at all times during the period beginning with the Date of Grant of this option and ending on the date of such exercise, have been employed by the Company or an Affiliate (as defined in the Plan) ... In the event the Participant's employment by the Company and its Affiliates ... terminates for reasons other than disability or retirement... this Option shall be canceled by the Company.

(Brown Decl. Exh. B at page 3, ¶ 3(c).)

---

[4] Paragraph 6 of the Separation Agreement, entitled "Obtaining Another Position," addresses the impact of alternate employment on DiLeo's severance and benefits which is not at issue in this action.

Plaintiff did not exercise any of his vested NQSOs before the end of the Separation Period. (Am. Compl. ¶ 37.) On April 25, 2008, Plaintiff's Separation Period ended and all of his outstanding NQSOs were cancelled. (Am. Compl. ¶ 45.)

### C. Plaintiff Makes a Belated Attempt to Exercise the Cancelled NQSOs and Commences the Instant Action

On July 11, 2011, DiLeo attempted to exercise his vested but unexercised NQSOs and learned, allegedly for the first time, that they had been cancelled at the end of the Separation Period. (Am. Compl. ¶¶ 43-45.) He commenced the instant action on or about September 21, 2012, initially asserting five causes of action against American Express for fraud in the inducement, breach of implied covenant of good faith and fair dealing, promissory and equitable estoppel and unjust enrichment. (Compl. at ¶¶ 31-85.)[5]

On October 12, 2012, Defendant moved to dismiss DiLeo's complaint on the grounds that none of his causes of action stated a viable claim. In lieu of opposing the motion, on November 5, 2012, Plaintiff amended his complaint, withdrawing his second and fourth causes of action for breach of implied covenant of good faith and fair dealing and equitable estoppel, and adding two new causes of action (and theories of recovery) for breach of contract and negligent misrepresentation. In its current incarnation, the Amended Complaint asserts the following:

#### 1. First Cause of Action: Breach of Contract

For his first cause of action, DiLeo alleges that American Express breached the terms of his Separation Agreement by "unilaterally cancelling [his] NQSOs without warning" and by refusing the reinstate those NQSOs. (Am. Comp. ¶ 52.) He argues that paragraph 4 of the Separation Agreement provided that NQSO awards that vested during the Separation Period

---

[5] Numbers in parentheses prefixed by Compl. ¶ __ " refer to paragraphs in Plaintiff's original pleading, dated September 21, 2012, and filed as docket entry ("D.E.") #1 in this action.

were somehow exempt from cancellation at the end of the Separation Period and would continue to be exercisable for 10-year terms according to their original grant dates. (Am. Compl. ¶ 36.)

### 2. Second Cause of Action: Negligent Misrepresentation

For his second cause of action, Plaintiff alleges that the Company had a duty to disclose and provide accurate and complete information to him regarding the terms of his Separation Agreement and that, nonetheless, "through its authorized representative Jason K. Brown" -- the Company's in-house employment counsel -- falsely, negligently or with careless and reckless disregard, represented to Plaintiff that he could "hold onto and exercise NSQOs beyond the Separation Period and for a period of up to ten years from the NQSOs' grant dates." (Am. Compl. ¶¶ 18, 56-59.)

### 3. Third Cause of Action: Fraud in the Inducement

DiLeo alleges fraud in the inducement as his third cause of action, contending that, in several conversations leading up to his November 6, 2006 execution of the Separation Agreement, Mr. Brown "repeatedly told Plaintiff that, as consideration for executing the Separation Agreement, Defendant was conveying to Plaintiff the ability to retain and exercise some NQSOs beyond the Separation Period and up to ten years from the NQSOs' grant dates." (Am. Compl. ¶ 67.)

DiLeo claims that he relied on Mr. Brown's alleged representations (notwithstanding the express integration clause and language to the contrary in the Separation Agreement) and did not exercise any of his vested NQSO awards prior to the end of the Separation Period because he claims that he "reasonably" believed that he "would still hold and retain the ability to exercise his vested NQSOs at any time within the ten years following each tranche's respective grant dates. (Am. Compl. ¶ 73.)

4. **Fourth Cause of Action: Promissory Estoppel**

For his fourth cause of action, DiLeo asserts a claim for promissory estoppel, predicated on the same factual assertions forming the basis for his fraud count. (*Id.* at ¶¶ 77-81.)

5. **Fifth Cause of Action: Unjust Enrichment**

Plaintiff's fifth and final cause of action alleges that the Company was unjustly enriched at his expense by cancelling or refusing to allow him to exercise his vested NQSOs, which DiLeo contends he "earned" through his employment with American Express. (*Id.* at ¶¶ 83-87.)

Additional facts may appear below.

## ARGUMENT

### I. THE PLAIN LANGUAGE OF THE SEPARATION AGREEMENT PRECLUDES PLAINTIFF'S FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT

Plaintiff's breach of contract centers on the argument that the Company breached the terms of the parties' Separation Agreement by cancelling Plaintiff's vested but unexercised NQSOs at the end of Plaintiff's Separation Period. This argument flies in the face of the plain and unambiguous terms of the Separation Agreement and should be dismissed as a matter of law.

In order to state a claim for breach of contract under New York law, a plaintiff must allege: 1) existence of an agreement; 2) adequate performance of the contract by the plaintiff; 3) breach of the contract provisions by the defendant; and 4) damages. *Tagare v. NYNEX Network Sys. Co.*, 921 F. Supp. 1146, 1149 (S.D.N.Y. 1996). Plaintiff cannot satisfy the third element of this cause of action.

Ignoring the plain language of the underlying Separation Agreement and the 1998 ICP, DiLeo makes the bare assertion that "those NQSOs which vested during the Separation

Period would be retained beyond the Separation Period and exercisable per their normal terms, *i.e.* within ten years from their original grant dates." (Am. Compl. ¶ 36) (emphasis in original).

Nowhere in the four corners of either the Separation Agreement or the 1998 ICP does any such provision appear, either explicitly or by implication, and no reasonable minds construing paragraph 4 could come to divergent understandings of the following language: "stock options .... which [DiLeo] currently hold[s] and which have not been exercised ... on or before ... the end of the Separation Period, will in accordance with their terms be canceled and terminated and all eligibility for payments pursuant thereto will cease." (Brown Decl. Exh. A at ¶ 4(a).) The 1998 ICP, in turn, is equally clear and unequivocal, providing that "In the event the Participant's employment by the Company and its Affiliates ... terminates for reasons other than disability or retirement... this Option shall be canceled by the Company." (Brown Decl. Exh. B at page 3, ¶ 3(c).)

DiLeo's employment with the Company terminated at the end of the Separation Period and his unexercised stock options were canceled in accordance with the terms of the Separation Agreement and the 1998 ICP incorporated by reference therein. Try as he may, DiLeo should not be allowed to create *post hoc* contractual rights where none exists. No breach of contract claim can lie against American Express and Plaintiff's first cause of action should be dismissed.

## II. PLAINTIFF'S SECOND CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION MUST BE DISMISSED FOR FAILURE TO PLEAD ANY FACTS SUGGESTING A FIDUCIARY DUTY

For his second cause of action, Plaintiff purports to assert a negligent misrepresentation claim predicated entirely on the alleged false oral representations of Jason K. Brown that plaintiff would be able to "hold onto and exercise NQSOs beyond the Separation

Date." (Am. Compl. ¶ 57.) This claim, like the first, is defective and should be dismissed because DiLeo has failed to allege any facts to establish that the Company owed him any duty.

To state a viable claim for misrepresentation under New York law, it was incumbent upon Plaintiff to allege that American Express had a duty, based on a special relationship with Plaintiff, to impart correct information; that American Express provided Plaintiff with false information; and that Plaintiff reasonably relied on such information. *Ellis v. Provident Life & Accident Ins. Co.*, 3 F. Supp. 2d 399, 411 (S.D.N.Y. 1998). Furthermore, such claim must be pled with specificity in accordance with 9(b) of the Federal Rules of Civil Procedure.

DiLeo has not established, and cannot establish, the existence of a "special relationship." First, there is no fiduciary relationship that inheres *per se* to an employer-employee relationship. *Id.* at 411. Secondly, Plaintiff alleges no facts from which to infer the existence of such a relationship. Instead, he points to Mr. Brown's position at the Company as Vice President and Group Counsel and the fact that Mr. Brown was " a seasoned employment lawyer who had significant experience handling AmEx employee separations prior to October 2006" to make the conclusory leap that the Company somehow "had a duty to disclose and provide accurate and complete information to [him] regarding the terms of the Separation Agreement." (Am. Compl. ¶¶ 18, 31, 56.) There is no merit to this argument.

Under New York law, a lawyer such as Mr. Brown, does not owe a fiduciary duty to non-clients with whom he is not in privity. *Doehla v. Wathne Ltd., Inc.*, 98 Civ. 6087 (CHS), 1999 U.S. Dist. LEXIS 11787, at *57 (S.D.N.Y. Aug. 3, 1999). DiLeo does not assert any facts to suggest, let alone establish, the existence of privity between himself and Mr. Brown. To the contrary, Plaintiff repeatedly alleges that Mr. Brown was counsel for American Express. (Am. Compl. ¶¶ 18, 31.) In addition, DiLeo had been advised to review the Separation Agreement

with an attorney of his choice and he took that advice, retaining counsel in both the United Kingdom and the United States to advise him regarding the termination of his employment. (*See* Brown Exh. A. at ¶¶ 2(h) and 10(b). Plaintiff himself was a sophisticated businessman whose discussions with Mr. Brown were over the arm's length negotiation of his lucrative Separation Agreement. These facts preclude any finding of privity.

Even assuming, *arguendo*, the existence of a fiduciary relationship, DiLeo cannot establish that he reasonably relied on Mr. Brown's alleged misrepresentations. The plain language of the Separation Agreement provided to the contrary, stating that "stock options …. which [DiLeo] currently hold[s] and which have not been exercised … on or before … the end of the Separation Period, will in accordance with their terms be canceled and terminated and all eligibility for payments pursuant thereto will cease." (Brown Decl. Exh. A at ¶ 4(a).) Plaintiff, himself a sophisticated businessman, was represented by his own counsel in connection with his termination from American Express. *Id.* at ¶ 2(h). Furthermore, the Separation Agreement contained an express integration clause providing that all previous agreements, promises, proposals, representations, understandings and negotiations – including, but not limited to the alleged false representations of Mr. Brown – were superseded by the Separation Agreement. (*Id.* at ¶ 15.) These factors, as a matter of law, militate against any finding of plausible reasonable reliance.

### III. PLAINTIFF'S THIRD CAUSE OF ACTION FOR FRAUD IN THE INDUCEMENT SHOULD BE DISMISSED AS A MATTER OF LAW

DiLeo's fraud count fares no better. Under New York law, to state a cause of action for fraud, a plaintiff must allege "'a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d

273, 291 (2d Cir. 2006) (*quoting Kaufman v. Cohen*, 307 A.D.2d 113, 760 N.Y.S.2d 157, 165 (N.Y. App. Div. 2003)); *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997).

In addition, where, as here, a fraud claim is brought alongside a breach of contract claim, a plaintiff must distinguish the two as an initial matter by alleging: (i) a legal duty separate from the duty to perform under the contract; (ii) a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) special damages proximately caused by the misrepresentation and unrecoverable as contract damages. *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 19-21 (2d Cir. 1996); *see also Saleemi v. Pencom Sys., Inc.*, No. 00 Civ. 7775, 2000 U.S. App. LEXIS 31760, at *4-5 (2d Cir., December 7, 2000) (applying the *Bridgestone* standard in an employment dispute and affirming dismissal of the plaintiff-employee's fraudulent inducement claim predicated on the defendant-employer's failure to satisfy terms of an employment agreement set forth in an offer letter); *Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1161 (S.D.N.Y. 1996); *Vista Co. v. Columbia Pictures Indus.*, 725 F. Supp. 1286, 1294 (S.D.N.Y. 1989) (requiring a plaintiff pleading fraudulent inducement to plead "special damages" apart from the damages from the breach of the underlying contract).

DiLeo's fraud claim is indistinguishable from his contract claim and is otherwise deficient on its face.

### A. Plaintiff's Fraud Claim is Indistinguishable From His Contract Claim and Fails to Satisfy the *Bridgestone* Test

Plaintiff's fraud claim fails to satisfy any of the elements of the *Bridgestone* test.

First, the Amended Complaint fails to plead any legal duty separate from American Express's duty to perform under the contract. Secondly, the false representations forming the basis of Plaintiff's fraudulent inducement claim are identical to his contract claim. Under both theories of recovery, DiLeo contends that American Express committed

(contractually and by representation) that Plaintiff would retain his vested NQSOs beyond the end of the Separation Period and could exercise them "per their normal terms, i.e. within ten years from their original grant dates." (Am. Compl. ¶¶ 26, 28-29, 36.) Finally, DiLeo fails to plead that he incurred special damages unrecoverable as contract damages.

The only discernible difference between Plaintiff's fraudulent inducement and breach of contract claims is the conclusory allegation in support of the fraud claim that American Express knowingly made false representations that Plaintiff could exercise his vested NSQOs beyond the end of the Separation Period with no intention to satisfy its contractual obligations in order to induce Plaintiff to executed the Separation Agreement. (*Id.* at ¶¶ 67-69.)

New York federal and state courts have uniformly rejected as meritless such contention. *Hudson Optical Corp. v. Cabot Safety Corp.*, No. 97 Civ. 9046, 1998 U.S. App. LEXIS 22391, at * 5-6 (2d Cir. Mar. 25, 1998) (fraud claim not viable where the alleged misrepresentations became express terms of the parties' underlying contract); *Grappo v. Alitalia-Linee Aeree Italiane, S.p.A.*, 56 F.3d 427, 434 (2d Cir. 1995) ("A cause of action for fraud does not generally lie where the plaintiff alleges only that the defendant entered into a contract with no intention of performing it."); *Bruce v. Martin*, No. 87 Civ. 8837, No. 90 Civ. 0870, No. 90 Civ. 4651, 1993 U.S. Dist. LEXIS 5776, at *17 (S.D.N.Y. April 30, 1993) ("'the elements of fraudulent inducement cannot be based on the same misrepresentations which form the basis of the breach of the underlying contract claim . . . ; if [the claim] is simply a reiteration of the contract claim it should be dismissed.'"); *Rocanova v. Equitable Life Assurance Soc'y*, 83 N.Y.2d 603, 614, 612 N.Y.S.2d 339, 343 (1994) ("A contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations."); *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 288 (1995) ("where a party is merely seeking to enforce its bargain, a tort claim will not lie.").

Simply put, Plaintiff's fraudulent inducement claim fails to satisfy any of the *Bridgestone* elements and should be dismissed.

      **B.**    **Even Assuming Satisfaction of the *Bridgestone* Requirements, Plaintiff's Fraud Claim Is Legally Deficient and Should be Dismissed**

DiLeo's fraudulent inducement claim still falters, even assuming, *arguendo*, that such claim is not duplicative of his contract claim.

As a matter of law, Plaintiff cannot establish reasonable or justifiable reliance on Mr. Brown's alleged oral misrepresentations extending the time for Plaintiff to exercise his NQSO awards beyond the end of the Separation Period. The plain language of the Separation Agreement provided to the contrary, stating that "stock options …. which [DiLeo] currently hold[s] and which have not been exercised … on or before … the end of the Separation Period, will in accordance with their terms be canceled and terminated and all eligibility for payments pursuant thereto will cease." (Brown Decl. Exh. A at ¶ 4(a).)

No claim for fraud in the inducement may lie where, as here, "'an express provision in a written contract contradicts a prior alleged oral representation in a meaningful fashion.'" *Clifton v. Vista Computer Servs., LLC*, 01 Civ. 10206 (JSM), 2002 U.S. Dist. LEXIS 12977, at *7 (S.D.N.Y. July 16, 2002) (*quoting Republic Nat'l Bank v. Hales*, 75 F. Supp. 2d 300, 315 (S.D.N.Y. 1999), *aff'd HSBC Bank v. Hales*, 4 Fed Appx. 15, 2001 WL 99830 (2d Cir.).

Plaintiff's third cause of action should be dismissed.

    **IV.**    **PLAINTIFF'S FOURTH CAUSE OF ACTION, ASSERTING PROMISSORY ESTOPPEL, IS ALSO DEFECTIVE ON ITS FACE AND MUST BE DISMISSED**

DiLeo's fourth cause of action asserts another quasi-contract claim of promissory estoppel. In order to state such a claim under New York law, a plaintiff must establish the following elements: (1) a promise, (2) reliance on the promise, (3) injury caused by the reliance,

and (4) an injustice if the promise is not enforced." *Weinreb v. Hospital for Joint Diseases Orthopaedic Inst.*, 404 F.3d 167, 172 (2d Cir. 2005) (quotation marks omitted).

However, where, as here, there is a valid, enforceable contract, a claim for promissory estoppel cannot stand as a matter of law. *Kwon v. Yun*, 606 F. Supp. 2d 344, 368 (S.D.N.Y. 2009); *see also Paxi, LLC v. Shiseido Americas Corp.*, 636 F. Supp. 2d 275, 287 (S.D.N.Y. 2009) ("[Promissory estoppel] is a narrow doctrine which generally only applies where there is no written contract, or where the parties' written contract is unenforceable for some reason."). "When an enforceable contract does exist, the parties cannot assert a claim for promissory estoppel based on alleged promises that contradict the written contract." *NCC Sunday Inserts, Inc. v. World Color Press, Inc.*, 759 F. Supp. 1004, 1011 (S.D.N.Y. 1991).

The rationale for such preclusion is because "where the terms of an unambiguous contract are inconsistent with the statements that form the basis of the claim, the claiming party could not have *reasonably* relied on those statements as a matter of law." *Randolph Equities LLC*, 648 F. Supp.2d at 524 (emphasis in original and quotation marks omitted); *see also Thayer v. Dial Indus. Sales, Inc.*, 85 F. Supp. 2d 263, 272 (S.D.N.Y. 2000) ("The representations relied upon are also inconsistent with the Employment Agreement in that plaintiff asserts that he was told that he would receive a bonus of sixty to one hundred percent of his salary, whereas the Employment Agreement states that a bonus is in the discretion of the Board of Directors.").

Paragraph 4(a) of Plaintiff's Separation Agreement expressly provided that any vested NQSO awards that were not exercised by the end of the Separation Period, i.e., April 25, 2008, would be cancelled. (Brown Decl. Ex. A at ¶ 4(a).) DiLeo's alleged reliance on Mr. Brown's putative verbal assurances to the contrary is unreasonable, as a matter of law.

Plaintiff's fourth cause of action should be dismissed.

## V.  DEFENDANT'S ALLEGED RETENTION OF PLAINTIFF'S VESTED NQSO AWARDS CANNOT FORM THE BASIS FOR AN UNJUST ENRICHMENT CLAIM AND PLAINTIFF'S FIFTH CAUSE OF ACTION SHOULD BE DISMISSED

DiLeo's final cause of action for unjust enrichment suffers from the same defects as his other quasi-contract claims. Under New York law, a claim for unjust enrichment comprises the following elements: (1) benefit to the defendant; (2) at the plaintiff's expense; and (3) equity and good conscience require restitution. *Amusement Indus.*, 693 F. Supp. 2d at 356 (*quoting Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)); *accord Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006).

However, where "there is an express contract governing the subject matter that was not breached, there can be no unjust enrichment." *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F. Supp. 976, 994 (S.D.N.Y. 1989). Since there is a valid, enforceable agreement in the instant case and since that agreement was not breached, Plaintiff is precluded from asserting any quasi-contract claim related to it.

Even assuming, *arguendo*, the absence of any such contract, DiLeo's unjust enrichment claim falters on its merits. In *Kinsey v. Cendant Corporation*, No. 04-CV-0582-RWS, 2004 U.S. Dist. LEXIS 2591946 (S.D.N.Y. Nov. 17, 2004), the district court rejected the same arguments Plaintiff advances here, finding that the "so-called benefit" derived by an employer from retaining a former employee's stock options as part of the pool of authorized stock "was a result of the purported misconduct of the employer, rather than a benefit that [the plaintiff] conferred on the Defendants." *Id.* at * 55.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that its Motion to Dismiss the Amended Complaint be granted, in its entirety, along with such other and further relief as this Court deems just and proper.

Dated: New York, New York
November 27, 2012

Respectfully submitted,

_____

Jean Y. Park
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
T: (212) 808-7800
F: (212) 808-7897